NATIONAL SURETY CO. v. UNITED STATES for Use of AMERICAN SHEET METAL WORKS et al.

(Circuit Court of Appeals, Fifth Circuit. February 12, 1919. Rehearing Denied March 15, 1919.)

No. 3272.

1. PRINCIPAL AND SURETY ☞57—SURETY COMPANIES—REINSURANCE—MATTERS COVERED.

Provision of contract, whereby the N. Surety Company agreed to take the place of the E. Surety Company on all its bonds on which no written notice was given by a certain time, that the E. Company agrees that there was no default on any of the bonds known to its officers, does not except from the reinsurance agreement a bond on which there was default known to such officers, in the absence of written notice, but is a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mere independent covenant, breach of which gives cause of action for damages.

2. PRINCIPAL AND SURETY ⊜⟩57 — SURETY COMPANIES — REINSURANCE — KNOWLEDGE OF DEFAULT.

Within the provision of a contract, whereby the N. Surety Company agreed to take the place of the E. Surety Company on its bonds, that there was no default on any of the bonds known to its officers, they are not shown to have known of a default on a bond for a government building contractor, because advised by government architect that the work would not be completed till about a certain date, seven months after the time provided by the contract; there being no default if the delay was caused, and allowance for it made, by the government, as authorized by the contract.

Appeal from the District Court of the United States for the Northern District of Mississippi; Henry C. Niles, Judge.

Suit by the United States, for the use of the American Sheet Metal Works and others, against the National Surety Company. From an adverse decree, defendant appeals. Affirmed.

Percy Bell, of Greenville, Miss., and Wm. Grant and Wm. B. Grant, both of New Orleans, La., for appellant.

J. S. Sexton, of Hazlehurst, Miss., for appellees.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. The Empire State Surety Company was the surety on a bond given by the contractors for the erection of a post office building at Greenwood, Miss. While that bond was in force, by an agreement entered into by and between the National Surety Company (which will be referred to as the appellant) and the Empire State Surety Company, made and dated September 18, 1912, the former, in consideration of the payment to it by the latter of 68 per cent. of the current unearned premium on each of the surety bonds specified in a schedule annexed to the agreement, in which was included the above-mentioned bond, reinsured—

"all the said unexpired surety bonds * * * for any default of the principals named in said bonds and for loss sustained by the insured in such policies after 4 o'clock p. m. of the 22d day of August, 1912, and agrees to repay to the Empire State Surety Company, its successors and assigns, any sum which the Empire State Surety Company shall be liable to pay in consequence of any such default."

That agreement contained the following, among other, provisions:

"The National Surety Company agrees to fulfill all the obligations of the Empire State Surety Company under the bonds and policies hereby reinsured against loss as above stated, and agrees to adjust all claims arising as aforesaid under any of such bonds and such policies at its own expense, and to pay, as aforesaid, all valid claims arising as aforesaid under said bonds and policies in accordance with their terms and conditions occurring after August 22, 1912, at 4 o'clock p. m. The Empire State Surety Company hereby transfers to the National Surety Company all its rights, interests, powers, and privileges under all such bonds and such policies, so that the National Surety Company may act thereon in all respects as if it had itself issued such bonds and such policies, and said National Surety Company may give any

⊜⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

notices in relation to said bonds and said policies that the Empire State Surety Company could give, such notices to be given either in its own name or in the name of the Empire State Surety Company, or both, and all notices, proofs of loss and other papers which the obligees in any of said bonds * * * shall have the right to give to the Empire State Surety Company may be given in like manner to the National Surety Company with like effect as if given to the Empire State Surety Company; it being the intention of this agreement that the National Surety Company shall take the place of the Empire State Surety Company as to all said unexpired bonds * * * in all respects with regard to all obligations therein and for loss thereunder, on which no written notice of claim was received by any of the officers of the Empire State Surety Company, located at its home office in the city of New York, or in the borough of Brooklyn, and upon which no written notice was received by any of its general agents, or branch office managers, located at [named places], or upon which any written notice was given to any agent of the said company prior to 4 o'clock p. m. on August 22, 1912. * * *

"The Empire State Surety Company agrees that upon none of the bonds and policies which have been or shall be tendered to the National Surety Company for reinsurance in accordance with the terms of this agreement has there been presented any written notice of claim to any of the officers of the Empire State Surety Company, located at [named places], or written notice of claim given to any agent of the company prior to August 22, 1912, at 4 o'clock p. m.. and that there was no known default, claim or loss upon any of said bonds and policies by any officer of the Empire State Surety Company located as aforesaid. And the Empire State Surety Company further agrees and warrants that its officers, located as aforesaid. have not waived or modified any of the conditions or provisions of any of said bonds * * * except as shall be shown by the papers attached to the files relating to such bonds and policies."

[1] By the terms of the bond given by the Empire State Surety Company, it was liable for a default of the contractors which occurred after August 22, 1912. No notice of a claim on that bond was given prior to 4 o'clock p. m. of August 22, 1912, or prior to the execution of the above-mentioned reinsurance contract. This suit involved the question whether, under that contract, the appellant was liable because of the default mentioned. By the decree appealed from it was decided that it was. The correctness of this decision is questioned on the ground that the contractors were in default on the contract prior to August 22, 1912, at 4 o'clock p. m., and that such default was known to officers of the Empire State Surety Company prior to that time. The correctness of the decree appealed from is not questioned on any other ground.

It seems that the last above quoted provision of the reinsurance contract is not entitled to be given such effect that a bond which, by the terms of the preceding part of the contract, was reinsured, was excluded from such reinsurance by the circumstance that a default of the principal was known to the surety at or prior to the time when the reinsurance was made effective. Without condition or qualification the appellant agreed to "take the place of the Empire State Surety Company as to all said unexpired bonds in all respects with regard to all obligations therein and for loss thereunder, on which no written notice of claim was received by" specified officers, general agents, or branch office managers of the Empire State Surety Company, "or upon which any written notice was given to any agent of the said company prior to 4 o'clock p. m. on August 22, 1912." Under that provision,

only the giving of a written notice was to have the effect of excepting an unexpired scheduled bond from the reinsurance obligation expressed. It was not stipulated that the fact that a default of the principal was known to the original surety was to have that effect. It seems that compliance with the other provision, whereby the original surety agreed "that there was no known default  *  *  *  upon any of said bonds and policies by any officer of the Empire State Surety Company located as aforesaid," was not made a condition precedent to the taking effect of the reinsurance obligation, and that that provision was an independent covenant, for a breach of which the covenantee would have an action for damages; that covenantee as the reinsurer remaining subject to the obligation imposed upon it by the contract.

[2] But, though the provision be treated as having the effect of excepting from the reinsurance agreement an unexpired bond, a default of the principal on which was known to an officer of the original surety at or prior to the time when the reinsurance became effective, it did not, under the evidence adduced, have that effect with reference to the bond in question. What is relied on to prove that, prior to August 22, 1912, the officers of the original surety knew of a default of the principal, is that, prior to that date, they were advised by a communication from the office of the United States supervising architect at Washington that the contract for the building of the post office would not be completed until about February 1, 1913. Knowledge of that fact, by itself, did not amount to knowledge of a default by the contractors. The contract provided that the work agreed to be performed "shall be completed in all its parts by July 1, 1912," and "that time is and shall be considered as of the essence of the contract on the part of" the contractors. But it contained, also, the following provision:

"It is further covenanted and agreed that the United States shall have the right of suspending the whole or any part of the work herein contracted to be done, whenever in the opinion of the supervising architect it may be necessary for the purposes or advantage of the work, and upon such occasion or occasions the contractor shall, without expense to the United States properly cover over, secure, and protect such of the work as may be liable to sustain injury from the weather, or otherwise; and for all such suspensions the contractor shall be allowed one day additional to the time herein stated for each and every day of such delay so caused in the completion of the work, the same to be ascertained by the supervising architect; and a similar allowance for extra time will be made for such other delays as the supervising architect may find to have been caused by the United States, provided that a written claim therefor is presented by the contractor within 10 days of the occurrence of such delays."

The contractors were not put in default by the noncompletion of the work by July 1, 1912, if the delay was caused and allowance for it made as provided for in the clause just quoted. One who knew only that the work was not completed by July 1, 1912, but did not know whether the delay was or was not such as the contractors had become entitled to in pursuance of the contract, cannot properly be said to have known that the contractors were in default. There was no evidence tending to prove that, at the time the reinsurance agreement was entered into or "prior to August 22, 1912, at 4 o'clock p. m.," any officer of the Empire State Surety Company knew whether the contractors

had or had not become entitled under the contract to delay the completion of the work until about February 1, 1913. The only ground relied on to support the contention that the appellant, under its reinsurance agreement, was not liable for the contractors' default, was unsupported by the evidence adduced. It follows that the complaint against the decree appealed from is not sustainable.

That decree is affirmed.